[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Facts:
The purpose of this suit is to determine whether the doctrine of approximation is appropriate for the bequest made of the residuary estate in the will of Howard E. Adt. Grace Hospital Society, Inc., the named object of Mr. Adt's bounty is no longer in existence. . . .
Howard E. Adt, a resident of Woodbridge died on October 14, 1923, leaving a will dated June 24, 1923. The will was duly proved and was admitted to probate by the probate court for the District of New Haven. Article VIII of the will provided that the residue of Mr. Adt's estate would pass to the First National Bank of New Haven in trust during the lives and until the death of his wife Henrietta, his daughter Ruth and his brother Evie. The First National Bank of New Haven was confirmed as trustee by the probate court and qualified and acted as trustee. The named plaintiff Shawmut Bank was successor trustee by merger and court approval to the First National Bank. Recently, Shawmut merged with Fleet National Bank so that, at present, Fleet National Bank is the existing successor trustee.
In article VIII (e) of Howard Adt's will, the testator provided that upon the death of the last surviving life tenant, ". . . I give all of the principal fund then in the hands of my said Trustee, together with all unexpended income, to the Grace Hospital Society, of New Haven Connecticut to be used for the purpose of building a Home and Training School for Nurses. In the event that a Home and Training School shall already have been built at said time, said Grace Hospital Society may, at its option, use said fund in whole or in part for altering, enlarging, repairing or equipping such Home and Training School or in providing a fund for maintenance of the same."
Ruth Adt, who through marriage became Ruth Adt Stephenson, was the last surviving life tenant. She died testate but without issue on December 23, 1990. Howard Adt's will provided no "gift over" provisions or any other manner of distribution of his residuary estate if, for any reason, the bequest to Grace Hospital Society, failed.
Grace Hospital Society was incorporated as a hospital by Special Act No. 412 dated June 12, 1989. . . . The General Hospital Society, popularly known as New Haven Hospital, was a previously existing hospital in New Haven having been incorporated by a special act on CT Page 689 May 19, 1826.
The charter of Grace Hospital Society was amended on June 19, 1895 by House Joint Resolution No. 414 so that the Society was authorized "to establish and maintain a school for training nurses and grant diplomas." Also enacted on June 19, 1895 was Special Act No. 397 whereby the General Assembly authorized Grace Hospital Society "to establish and maintain a Training School for Nurses for the two-fold purpose of caring for patients in Grace Hospital and of fitting young women for the nursing profession. . . . Previously, on June 19, 1873, the General Assembly had incorporated the Connecticut Training School for Nurses, one of the earliest nursing schools in the United States. In 1881, the General Hospital Society of Connecticut made one of its buildings available for use by the Connecticut Training School for Nurses.
The number of training schools for nurses in the United States increased from 3 in 1873 to 432 by 1900 and 1,129 by 1910. Most of the training schools were hospital based and service oriented. By using students as providers of service, hospitals were able to reduce the cost of nursing care. In these early schools, the primary focus was on service rather than education.
An increasing number of American universities, however, began to appreciate the importance of nursing education as well as hospital affiliations for medical students. On May 19, 1913, a formal affiliation agreement was entered into by Yale University and the General Hospital Society of Connecticut. On October 23, 1923, pursuant to an agreement among Yale University, the General Hospital Society of Connecticut and the Connecticut Training School for Nurses, the Yale School of Nursing came into existence as a faculty of Yale University. . . . The Connecticut Training School for Nurses, however, continued its separate existence and used its administrative experience in the development of nursing programs. Cooperative programs for education and training between the Connecticut Training School for Nurses and the Grace Hospital Training School existed before the Yale School of Nursing was opened. These cooperative programs were continued by the Yale School of Nursing.
In 1926, Grace Hospital Society had converted a building on Orchard Street into a dormitory to house 25 nurses and a recreation center. Grace Hospital Society, however, never was able to obtain sufficient funds to build a new nurses' home despite repeated references to the need for the same in its annual reports. Grace Hospital CT Page 690 Society never had facilities sufficient to house all of the students in the Grace Hospital Training Program.
In 1927, by Special Act No. 465, Grace Hospital Society was authorized to unite or merge with the General Hospital Society of Connecticut. The merger was not carried out because of financial considerations. A consolidation of the two societies did occur in 1945 pursuant to Special Act No. 95. The resulting unit was known as Grace-New Haven Community Hospital. . . . The Grace Education Building served as a home and training school for the Grace-New Haven School of Nursing until 1975.
In 1965 Grace-New Haven Community Hospital amended its charter to change its name to Yale-New Haven Hospital, Inc. The Grace-New Haven Hospital School of Nursing, as the original Grace Hospital Training Program had come to be known, continued to operate as a hospital based nursing school under the name "Grace-New Haven" for another ten years. The last class graduated in 1975. After the school closed, its records have been retained and requests for information therefrom have been honored by the Nursing Education Department of Yale-New Haven Hospital's Division of Nursing.
The closing of the Grace-New Haven Hospital School of Nursing was indicative of a national trend in nursing education that saw hospital-based diploma programs supplanted by college or university studies leading to an associate or a baccalaureate degree. . . .
When Howard E. Adt made his will in 1923, student nurses at Grace Hospital and, indeed, elsewhere were generally young single women in need of housing or at least more attracted to provided housing. When Ruth Adt Stephenson died in 1990, the demographics were quite different. Students were older, often married, sometimes with dependent children or parents. Also men now composed a significant portion of the student-nurse and professional nurse population.
Yale-New Haven Hospital, Inc. as the corporate successor to the Grace Hospital Society does not have a training school for nurses. But Yale-New Haven Hospital is affiliated with Yale University's School of Nursing. Yale-New Haven Hospital's Division of Nursing has a Nursing Education Department which with the Yale School of Nursing runs joint programs in nursing education, research, training and development. . . . CT Page 691
Even before the merger of the Grace Hospital Society and the General Hospital Society of Connecticut, there was cooperation between the two hospitals and the Yale School of Nursing. . . . Section 12 of Special Act No. 95 (1945), the consolidating statute, provided that gifts, including legacies, bequests and devises previously made or that, in the future, may be made to either Grace Hospital Society or General Hospital Society of Connecticut would be administered as follows: After and as soon as such consolidation shall become effective all subscriptions, gifts, grants, legacies, bequests and devises which have heretofore been or which may hereafter be made, given or left to either of the constituent corporations in trust or otherwise by any will, instrument of trust or gift or otherwise, for charitable uses or purposes or for corporate purposes shall be held and administered by such resulting corporation, which is hereby empowered to accept, hold and administer any and all subscriptions, gifts, grants, legacies, bequests and devises which shall be made, given or left to it in trust or otherwise." Thus, it is not the absence of an entity but rather the disappearance of a program that requires consideration of the doctrine of approximation. Yale-New Haven Hospital, Inc., the resulting corporation, does not operate a home and training school for nurses. Neither does the curriculum of the Yale Nursing School nor the living arrangements of its students comport with those of the former hospital-based training schools. Today, the Grace Education Building is being used for purposes other than a nurses training school. Moreover, even if the erection of a building or renovation of the Grace Building to serve as a home or dormitory should be deemed advisable, the amount of Howard Adt's bequest valued, as of August 28, 1996, at $1,753,471.29 is inadequate for such an endeavor. . . .
Discussion:
As heretofore noted, the parties are in agreement as to the distribution of Howard Adt's estate. Their recommendation is that after payment of a total of $75,000.00 to residuary beneficiaries under the will of Ruth Adt Stephenson, the remainder of Howard Adt's estate be given, by application of the doctrine of approximation to Yale-New Haven Hospital, Inc. The Hospital has promised if the court approves the settlement, to establish the Howard E. Adt Memorial Scholarship Fund. . .
The doctrine of approximation or "cy pres", as it is generally known is well-established in Connecticut law. See e.g Lockwood v.Killian, 179 Conn. 62 (1979); Ministers Missionaries BenefitBoard v. Meriden Trust Safe Deposit Co., 139 Conn. 435 (1953). CT Page 692 The doctrine applies where a testator has disclosed an intent to bequeath his property to some charitable purpose but, due to changed circumstances, it has become impossible, impractical or illegal to follow his chosen method. Courts will then, as a matter of equity, sanction the use of the testator's property in some other way which will approximate his intent as nearly as may be done. Duncanv. Higgins, 129 Conn. 136, 140 (1942).
What is important in any decision concerning the doctrine of approximation is to determine whether the testator's primary, or as some courts phrase it dominant, intent was to benefit a specific charitable purpose or a particular charitable institution. If the latter is found and the institution becomes non-existent before it becomes entitled to the gift, the doctrine of approximation cannot be used. [Citations omitted.] In this case, legislation . . . provided that the successor hospital, Grace-New Haven Community now Yale-New Haven, will receive bequests made to the former Grace Hospital Society. But the doctrine of approximation will not apply if Howard E. Adt's primary intention is found to have been to benefit only the Nurses' Training School of the former Grace Hospital Society.
In determining Howard E. Adt's intent, the court must treat his will as a whole and consider the circumstances that were present when the will was executed. Some rules of construction exist that will aid in this review. Where a testator in his will has made a bequest to a charitable entity to be applied to a particular charitable purpose, it will be inferred that use of the bequest for the designated purpose was the testator's primary or dominant intention and that the choice of the organization to make it was secondary. Duncan v.Higgins, supra at 140 . . . [Citation omitted.] If after several smaller bequests, the testator's ultimate bequest was for charitable purposes, the extent of the testator's generosity has been held to be indicative of a general intention to benefit charity. Hartford NationalBank Trust Co. v. Oak Bluffs First Baptist Church,116 Conn. 347, 354 (1933). The absence of a "gift over" should something happen to the designated charity is considered to be evidence of a general charitable intent. CBT v. Johnson Memorial Hospital,30 Conn. Sup. 1, 8 (1972). Howard Adt's will can be construed consistently with these rules. His bequest to the Grace Hospital Society was for the purpose of building a home and training school or for improving and maintaining the home and training school should it have been erected while a life tenant was still living. He made several of his bequest smaller pecuniary legacies four of them being to designated charities and then reserved his residuary estate for his immediate family during their liens with the ultimate CT Page 693 residue to the Grace Hospital Society. There was no "give over" to an individual or to another charity if something happened to Grace Hospital Society. Further, reference has already been made to the annual messages of the President of the Grace Hospital Society when Howard E. Adt was a member of the board of directors. The messages can be reasonably assumed to be culminations of matters discussed at meetings of the board. They advocated not only the need for a building at Grace Hospital but also bemoaned the general conditions under which student nurses in the United States lived and trained. From all of the facts that have been found, the court concludes that Howard E. Adt's primary intention in making the bequest of the residue of his estate was to benefit nursing education and to make the nursing profession more attractive. Application of the doctrine of approximation, therefore, is appropriate.
With one exception, the court approves the parties' plan for a perpetual Howard E. Adt Memorial Scholarship Fund. The exception is that recipients of scholarships who are practicing nurses at Yale-New Haven Hospital should not be limited to courses established and run jointly by Yale-New Haven and Yale.
Barnett, J.
CT Page 694